IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ERIC WARBELTON, and JOSE SILVA, | ) | 8:09CV132 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| ROBERT HOUSTON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Defendants' Motion for Summary Judgment. (Filing No. 40.)  For the reasons discussed below, Defendants' Motion is granted.

## I.  BACKGROUND

Plaintiffs filed their original Complaint in this matter on April 14, 2009, alleging constitutional claims against twenty Defendants.  (Filing No. 1.)  Plaintiffs later filed a Motion to Amend their Complaint, which the court granted.  (Filing No. 17.)  Plaintiff's Amended Complaint is the operative pleading in this matter.  (Filing No. 18.)

Condensed and summarized, Plaintiffs allege that they are being "singled out" and harassed for talking about the "Falls City Mafia."  (*Id*. at CM ECF pp. 7-10, 15, 17-18, 24-25, 37.)  The Falls City Mafia is allegedly a group of correctional officers and staff from Falls City, Nebraska, that work at the Tecumseh State Correctional Institution ("TSCI").  (*Id*. at CM/ECF p. 7; Filing No. 1 at CM/ECF p. 10.)  On June 1, 2010, Defendants filed a Motion for Summary Judgment along with a Brief and an Index in Support.  (Filing Nos. 40, 41 and 42.)  Plaintiffs did not respond to this Motion.  (*See* Docket Sheet.)

The party seeking the entry of summary judgment in its favor must set forth "a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law." NECivR 56.1(a)(1). If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). Such response must "address each numbered paragraph in the movant's statement" of facts and must contain pinpoint citations to evidence supporting the opposition. *Id.* "Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response." *Id.*; *see also* Fed. R. Civ. P. 56(e) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.").

Defendants submitted a statement of material facts in accordance with the court's Local Rules. However, Plaintiffs have not submitted any "concise response" to those facts. Further, Defendants submitted evidence properly authenticated by affidavit. Plaintiffs have not. This matter is therefore deemed fully submitted and facts set forth by Defendants in their Brief are "deemed admitted" and are adopted below.

## II.   RELEVANT UNDISPUTED FACTS

**Facts Pertaining to Warbelton**

1.     Plaintiff Eric Warbelton ("Warbelton") is an inmate confined at TSCI.

2.     On August 12, 2008, Warbelton made a remark to another inmate about a group of correctional officers that Warbelton refers to as the Falls City Mafia.

2

3.     Defendant Donald Weddle ("Weddle") overheard this remark and informed Warbelton that he should not be talking about the Falls City Mafia.

4.     On August 12, 2008, Warbelton was working in the kitchen. While he was working, Defendant Tyler Gerdes ("Gerdes") ordered Warbelton to scrub walls. Gerdes warned Warbelton that if he failed to scrub the walls he would be fired.

5.     Warbelton complained to Defendant Dominic Witherspoon ("Witherspoon") about Gerdes's orders.  Witherspoon advised Warbelton to follow staff directives.

6.     On August 13, 2008, Warbelton and another inmate were ordered to wash windows in the dining hall. Both inmates were making comments about the Falls City Mafia and were asked to stop.  Both refused to stop and were taken to holding.

7.     On August 14, 2008, Weddle was asked, by radio, to take Warbelton to holding. Weddle reported to the kitchen, restrained Warbelton, and escorted him to holding.  During this process, Warbelton asked Weddle why he was being taken to holding and Weddle responded that he did not know.

8.     After being taken to holding, Warbelton returned to his job in the kitchen and was asked to scrub the walls.

9.     Sometime after August 14, 2008, Warbelton informed his grandmother about what was happening at TSCI and she called Defendant Fred Britten ("Britten") to complain.  After receiving the call, Britten asked Defendant Shaun Settles ("Settles") to interview Warbelton and investigate whether a group of TSCI correctional officers were referring to themselves as the Falls City Mafia.  Settles completed his investigation and concluded that the Falls City Mafia did not exist.

10.     On September 1, 2008, Gerdes questioned whether Warbelton was assigned to taste test food as part of his kitchen duties.

11.     In September 2008, Gerdes assisted unit staff in locking down Warbelton's unit.  During the lockdown, Warbelton was disruptive, so TSCI staff took him to holding.

12.     On October 3, 2008, Defendant Timothy Gilkerson ("Glickerson") assigned Warbelton extra work in the kitchen.

13.     On November 7, 2008, Gilkerson placed Warbelton on lay-in from his kitchen job for eating food without permission.

14.     At TSCI, kitchen workers are only allowed to taste test food if they have supervision and prior approval.  In addition, kitchen workers may be assigned additional duties if they are not working on their primary duties.

15.     Under Nebraska Department of Corrections Policy, inmates are prohibited from using language to "harass, demean, or cause alarm."  In addition, inmates are prohibited from disobeying a verbal or written order from an employee.

**Facts Pertaining to Silva**

16.     Plaintiff Jose Silva ("Silva") is an inmate confined at TSCI.

17.     Silva and Warbelton are cell-mates.

18.     On August 6, 2008, Silva received a misconduct report and was placed on administrative lay-in from his work in the kitchen.

19.     Between September 2008 and November 2008, Silva repeatedly filed grievances regarding alleged harassment by the Falls City Mafia.

20.     On November 14, 2008, the TSCI Disciplinary Committee found Silva guilty of "creating a disturbance in the housing unit by yelling at staff during a cell search." The TSCI Appeals Board upheld this decision.

(Filing No. 18 at CM/ECF pp. 1-2, 7, 9, 25, 31, 35-37; Filing No. 42, Attach. 1-10.)

## III. DISCUSSION

### A.    Standard of Review

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). *See also Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446 (8th Cir. 1994). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999). In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate the allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially the test is

5

"whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

## B.    Defendants' Motion

### 1.    *Sufficiency of Allegations*

Defendants argue that Plaintiffs have failed to allege personal participation by Defendants Broadfoot and Houston.  (Filing No. 41 at CM/ECF p. 5.)  The court agrees.

Plaintiffs have failed to allege that Broadfoot and Houston were personally involved in or directly responsible for the conduct leading to the claims contained in their Amended Complaint.  Consequently, Plaintiffs' Amended Complaint fails to state a claim upon which relief may be granted against Broadfoot and Houston.  *See Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999) (concluding that a complaint was properly dismissed because plaintiff failed to allege facts supporting any individual defendant's personal involvement or responsibility for violations); *see also Ashcroft*, 129 S. Ct. at 1950 (stating that a plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged).

Moreover, to the extent that Plaintiffs allege Houston is liable as prison supervisor, their claim fails because *respondeat superior* is not a basis for liability under 42 U.S.C. § 1983.  *See Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (finding that general responsibility for supervising operations of prison is insufficient to establish personal involvement required to support liability).

## 2.    *Qualified Immunity*

Defendants also argue that they are entitled to qualified immunity for Plaintiffs' claims against them.  (Filing No. 41 at CM/ECF pp. 9-11.)  Again, the court agrees.

### a.    Legal Standards

Qualified immunity is a question of law to be determined by the court and should ordinarily be decided long before trial.  *Hunter v. Bryant*, 502 U.S. 224, 228 (1991).  "Public officials, of course, are entitled to qualified immunity from liability for damages under 42 U.S.C. § 1983 if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Domina v. Van Pelt*, 235 F.3d 1091, 1096 (8th Cir. 2000) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  In short, "qualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful in light of clearly established law and the information [that the defendant] possessed."  *Smithson v. Aldrich*, 235 F.3d 1058, 1061 (8th Cir. 2000) (citations and quotations omitted).  "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."  *Id.* (citations and quotations omitted).  Moreover, qualified immunity is "the usual rule" and state actors will enjoy qualified immunity in all but "exceptional cases."  *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996).

The court focuses on two questions to determine whether a state official is entitled to qualified immunity: "(1) whether, after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a constitutional or statutory right; and, if so, (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand that their conduct was unlawful . . . ."  *Henderson v. Munn,* 439 F.3d 497, 501 (8th Cir. 2006) (citations

and quotations omitted).  Thus, the "initial inquiry is whether the facts as alleged show that the officers' conduct violated a constitutional right. . . . If the facts do not show a violation, [a court] need not proceed further with the qualified immunity analysis."  *Brockinton v. City of Sherwood*, 503 F.3d 667, 672 (8th Cir. 2007).

> b.   Deprivation of a Constitutional Right

Liberally construed, Plaintiffs allege that Defendants violated their First, Fourteenth and Eighth Amendment rights.  (Filing No. 18 at CM/ECF p. 5.)  The court will explore each claim in turn.

> i.   *First Amendment*

First, Plaintiffs allege that Defendants retaliated against them for exercising their First Amendment free speech rights.  (Filing No. 18 at CM/ECF pp. 3, 7.)  To allege a retaliation claim for the exercise of a constitutional right Plaintiffs must show that they engaged in a protected activity and that Defendants, to retaliate for the protected activity, took adverse action against Plaintiffs that would chill a person of ordinary firmness from engaging in that activity.  *See Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004), *cert. denied*, 546 U.S. 860 (2005).  However, "if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one" of the three-step retaliation analysis.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987) (holding that a prison regulation that "impinges on inmates' constitutional rights" is nevertheless valid if that regulation "is reasonably related to legitimate penological interests.").

Chapter Five of the Nebraska Administrative Code states that all inmates are subject to the Code of Offenses.  68 Neb. Admin. Code, ch. 5 § 002; (Filing No. 42-10, Attach. 10 at CM/ECF p. 2.)  Under the Code of Offenses, inmates are prohibited

from using language to "harass, demean, or cause alarm." 68 Neb. Admin. Code, ch. 5 § 005; (Filing No. 42-10, Attach. 10 at CM/ECF p. 5.)  Moreover, inmates are prohibited from disobeying a verbal or written order from an employee. 68 Neb. Admin. Code, ch. 5 § 005; (Filing No. 42-10, Attach. 10 at CM/ECF p. 4.)

In their Amended Complaint, Plaintiffs allege that they repeatedly referred to certain correctional officers as the "Falls City Mafia." (Filing No. 18 at CM/ECF pp. 9, 25, 31, 35-37.)  These references continued even after TSCI employees asked them to stop.  (*Id*.)  Consequently, Plaintiffs were taken into holding or disciplined pursuant to the Code of Offenses.  (*Id*.; Filing No. 42-8, Attach. 8; Filing No. 42-9, Attach. 9.)  Indeed, the First Amendment does not provide an inmate with the right to address corrections personnel in an offensive, threatening or abusive manner. *Savage v. Snow*, 575 F.Supp. 828, 836 (S.D.N.Y. 1983).  Accordingly, Plaintiffs' First Amendment retaliation claim fails as a matter of law because their use of the words "Falls City Mafia" was not protected activity.

## ii.    Fourteenth Amendment

Second, the court liberally construes Plaintiffs' Amended Complaint to allege that Defendants deprived them of their Fourteenth Amendment equal protection rights.  (Filing No. 18 at CM/ECF p. 5.)  The Equal Protection Clause of the Fourteenth Amendment requires the government to treat similarly-situated people alike, a protection that applies to prison inmates. *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 984 (8th Cir. 2004).  In order to establish an equal protection claim, a prisoner must show that he was treated differently from similarly-situated inmates and that the different treatment was based upon either a suspect classification or a fundamental right. *Weems v. Little Rock Police Dep't*, 453 F.3d 1010, 1016 (8th Cir. 2006); *Weiler v. Purkett*, 137 F.3d 1047, 1052 (8th Cir. 1998).

Here, Plaintiffs allege that they were "singled out" and treated differently than other inmates because they referred to certain correctional officers as the Falls City Mafia. (Filing No. 18. at CM/ECF pp. 9, 25, 31, 35-37.)  However, as discussed above, Plaintiffs' use of the words "Falls City Mafia" was not protected conduct. Moreover, Plaintiffs have not alleged sufficient facts for the court to reasonably infer that Defendants' conduct was based upon a suspect classification. *See also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009)* ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")  Thus, Plaintiffs' Amended Complaint fails to establish that they experienced any different treatment based on a suspect classification or the exercise of a fundamental right.

### iii.    Eighth Amendment

Third, the court liberally construes Plaintiffs' Amended Complaint to allege that Defendants violated Plaintiffs' Eighth Amendment right to be free from cruel and unusual punishment. (Filing No. 18 at CM/ECF p. 5.)  The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII.  In addition, a prisoner's conditions of confinement are subject to scrutiny under the Eighth Amendment. *Kahle v. Leonard, 477 F.3d 544, 550 (8th Cir. 2007)*.  The Eighth Amendment standard for conditions of confinement is whether Defendants acted with deliberate indifference. *Nelson v. Corr. Med. Servs., 583 F.3d 522, 528 (8th Cir. 2009)* (en banc).  A prison official is deliberately indifferent if he "knows of and disregards" a substantial risk to an inmate's safety. *Id*.

Here, Plaintiffs do not allege facts to suggest that Defendants were deliberately indifferent to a substantial risk of Plaintiffs' safety.  Thus, Plaintiffs' Amended Complaint also fails to state an Eighth Amendment claim.

In short, Plaintiffs have not established that Defendants violated a constitutional right and there is no need to proceed with the second part of the qualified immunity analysis. Defendants are entitled to qualified immunity and Plaintiffs' constitutional claims against them are dismissed.

IT IS THEREFORE ORDERED that:

1.     Defendants' Motion for Summary Judgment (filing no. 40) is granted.

2.     Plaintiffs' federal claims against Defendants are dismissed with prejudice.

3.     A separate judgment will be entered in accordance with this Memorandum and Order.

DATED this 20th day of July, 2010.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.